## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer,* EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, and PATRICK COLLIGAN,<br><br>        Plaintiffs,<br><br>        v.<br><br>TRUE SOFTWARE SCANDINAVIA AB, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>        Defendants. | Civil Action No.: 1:25-cv-07650-HB<br><br>Civil Action |

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(6)

---

**PEM LAW LLP**
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email: rparikh@pemlawfirm.com
     jmerejo@pemlawfirm.com
     tkraft@pemlawfirm.com
*Attorneys for Plaintiffs*

***Of Counsel and On the Brief:***
Rajiv D. Parikh, Esq.
Jessica A. Merejo, Esq.
Thomas R. Kraft, Esq.

# <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Am. Boat Co. v. Unknown Sunken Barge</u>, 418 F.3d 910, 914 (8th Cir. 2005) ............................ 11

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) .................................................................. 9, 11

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007) ...................................................... 9, 11

<u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 786 (3d Cir. 2016) ............................................ 9

<u>Cryopak Inc. v. Freshly LLC</u>, No. cv-23-18896, 2024 WL 4986818, at *2–3 (D.N.J. Dec. 5, 2024) ........................................................................................................................ 9

<u>Kennell v. Gates</u>, 215 F.3d 825, 829 (8th Cir. 2000) ........................................................... 11

<u>Kratovil v. City of New Brunswick</u>, Docket No.: A-0216-23, 2024 WL 1826867, at *3 (App. Div. Apr. 26, 2024) <u>aff'd</u> <u>Kratovil v. City of New Brunswick</u>, 261 N.J. 1 (2025) .................. 19

<u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) .............................................. 9

<u>Stephenson v. AT&T Servs., Inc.</u>, Civ. Act. No. CV 21-0709, 2021 WL 3603322, at *5 (E.D. Pa. Aug. 13, 2021) ............................................................................................................ 11

**Statutes**

<u>N.J.S.A.</u> § 56:8-166.1 ................................................................................ 1, 12, 18, 20

**Rules**

Fed R. Civ. P. 12(b)(6 .................................................................................... 1, 2, 9, 23

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 1

LEGAL ARGUMENT ........................................................................................... 9

I.    THE MOTION TO DISMISS SHOULD BE DENIED AS PLAINTIFFS HAVE
SATISFIED THE MINIMUM PLEADING STANDARD UNDER RULE 12(b)(6). ................. 9

A.    The Complaint Adequately Alleges Defendants' Receipt of Nondisclosure Requests Sent
by Covered Persons ............................................................................................ 11

B.    The Complaint Adequately Alleges Defendants Disclosed and Continue to Disclose on the
Internet—or "Otherwise Make Available"— Protected Information After Receipt of the Written
Notice ............................................................................................................ 15

1.    Disclosures Through Defendants' Bulk Enrichment Service Independently Violate Daniel's
Law  16

2.    Disclosures by Reverse-Phone Look Up Tools Are Subject to Daniel's Law. .................. 17

3.    Defendants Disclose, Redisclose on the Internet or Otherwise Make Available, the Names
and Unpublished Home Telephone Number of Covered Persons ................................... 24

CONCLUSION ................................................................................................. 25

## PRELIMINARY STATEMENT

Rather than comply with the simple mandates of a law designed to protect public servants, defendant True Software Scandinavia AB and its associated entities pled as ABC Companies 1-10 (collectively, "Defendants") submit an inaccurate and deceptive "declaration" replete with factual misrepresentations in an attempt to manipulate Plaintiffs' well pled allegations. Defendants' creative legal arguments, designed to avoid discovery and liability, which are based on misstatements made in the "declaration" still do not satisfy their high burden for dismissal of Plaintiffs' claims under Daniel's Law, N.J.S.A. § 56:8-166.1 ("Daniel's Law") pursuant to Rule 12(b)(6). Plaintiffs have more than satisfied the minimum pleading requirements necessary to defeat a motion to dismiss under Rule 12(b)(6).[1] Indeed, as this Court has found before, the Complaint sets forth specific, well-pled allegations supporting Plaintiffs' claims under Daniel's Law and therefore states a claim upon which relief can be granted.

As set forth below, dismissal under Rule 12(b)(6) is unwarranted for two independent reasons. First, Plaintiffs Atlas Data Privacy Corporation ("Atlas"), *as*

---

[1] Defendants argument under Rule 12(b)(2) similarly fails. Pursuant to the Court's September 12, 2025 Order staying briefing on Rule 12(b)(2) motions, Plaintiffs served interrogatories and received deficient responses to same on November 26, 2025, but will be proceeding with a deficiency letter and deposition of Defendants' corporate representative in December.

1

*assignee of individuals who are Covered Persons* ("Assignors") and individual plaintiffs Jane Doe-1, *a law enforcement officer*; Edwin Maldonado; Scott Maloney; Justyna Maloney; and Patrick Colligan ("Individual Plaintiffs" with Atlas, "Plaintiffs") have adequately asserted each element of a claim under Daniel's Law. The Complaint alleges that the Individual Plaintiffs and Assignors submitted written nondisclosure requests directing Defendants to cease disclosure and remove their Protected Information (as defined in the Complaint); that Defendants received those requests; and that Defendants continued to disclose or otherwise make available Protected Information beyond the statute's ten-business-day compliance period. Those allegations—accepted as true and construed in Plaintiffs' favor—more than satisfy Rule 8 and the pleading standards under Twombly and Iqbal.

Second, Plaintiffs have adequately alleged that Defendants comprise a person, business or association that discloses protected information of covered persons after reasonable diligence. While only the pleadings should be reviewed on a Rule 12(b)(6) motion, Defendants go beyond the pleadings to submit a declaration of Defendants' employee and then argue that Plaintiffs' allegations are factually incorrect. The Court must disregard this declaration at the pleadings stage. But, there is another reason the declaration must be disregarded; it is wrong on the facts. Plaintiffs submit some limited publicly available information to rebut Defendants' statements should the Court choose to consider same.

2

Contrary to the inaccurate "declaration," Defendants actually make business-to-business and business-to-consumer products available in the United States, have filed sworn statements with the U.S. Government averring to commercial activity in the U.S., and have, and continue to, disclose the name and unpublished home phone number of covered persons in violation of Daniel's Law. No opaque corporate structures or narrowly tailored and carefully-crafted sworn statements can change the fact that Plaintiffs have sufficiently alleged – following investigative work – that Defendants have and continue to violate Daniel's Law. Indeed, Defendants' recent actions confirm this fact, despite their contrary statements in the improperly submitted declaration. Nonetheless, at this stage, disputes of fact mandate denial of the motion to dismiss, allowing the parties to proceed with merits discovery. For these reasons, and as set forth below, the motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Defendants are persons, businesses, or associations that disclose or redisclose on the Internet, or otherwise make available, the names and unpublished home telephone numbers of covered persons in violation of Daniel's Law. See Certification of Thomas R. Kraft, Esq. ("Kraft Cert.") at Exhibit A, ¶34. Daniel's Law defines disclosure to mean "to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present,

exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." Id. at Exhibit A, ¶9. As alleged in the Complaint, Defendants offer and engage in the disclosure of data and information through one or more websites or applications in the U.S. (including in New Jersey), including truecaller.com and a related mobile application, to businesses and individuals who operate or reside in the U.S. Id. at Exhibit A, ¶36.

Defendants disclose Covered Persons' protected information through services offered via truecaller.com, which is owned by defendant True Software Scandinavia AB. See Kraft Cert. at Exhibit B; Id. at Exhibit A, ¶37. Defendants also developed, own, and control the Truecaller mobile application ("Truecaller App"), which is available to iOS and Android users in the U.S. and globally. See Def. Br., Declaration of Ola Espelund, at ¶6, ("Espelund Decl.").

Through both Truecaller.com and the Truecaller App, Defendants offer a reverse phone lookup tool that violates Daniel's Law. See Def. Br. at p. 7. This tool allows a customer to enter an unpublished home telephone number and receive, in response, the name of the Covered Person and confirmation of the associated phone number. See Certification of Full Nelson Investigations ("FNI Cert.") at ¶7-8. In other words, Defendants' tool *connects* an unpublished phone number with a Covered Person. Id. The Complaint includes a redacted example of Protected

4

Information from one Individual Plaintiff obtained from Defendants' reverse phone lookup tool. <u>See</u> Kraft Cert. Exhibit A at p. 17. As alleged, Defendants' reverse phone lookup tool violates Daniel's Law. <u>Id.</u>

In addition, Defendants also offer a "bulk enrichment" service that independently violates Daniel's Law. Through their "bulk enrichment" service, an individual or business can upload large datasets of phone numbers and Defendants then automatically enrich them with actionable insights including through providing the names associated with these phone numbers. <u>See</u> Kraft Cert. at Exhibit C. As with the reverse lookup tool, Defendants' "bulk enrichment" services connect an unpublished home telephone number with a Covered Person. Plaintiffs will produce additional evidence in discovery of Covered Persons' names and unpublished home telephone numbers disclosed by Defendants to Plaintiffs' investigators.

In response to these allegations in the Complaint, Defendants first contend (through improper declaration testimony) that the Truecaller App is "publish[ed]...in Europe only." Espelund Decl., ¶17. This assertion is a matter for discovery, but even at this stage appears to be facially inaccurate. The Truecaller App was and is readily available on both the iOS and Android mobile application stores in the United States, and those stores identify "True Software Scandinavia AB" as the application host, owner, and/or operator. <u>See</u> Kraft Cert. at Exhibits D & E. Defendants publicly state that they have a user base of over 450 million individuals worldwide, and the iOS

5

App Store displays nearly 250,000 reviews of the iOS application alone, including tens of thousands from users in the United States. Id. at Exhibit F. Discovery will further refute Defendants' contentions.

Defendants also claim (via self-serving declaration testimony) that they "[do] not sell the Truecaller [App] or other services to citizens of New Jersey, or indeed, the United States." Espelund Decl. at ¶17. This statement is likewise false. The Truecaller App, along with Defendant's premium subscription services and products, is made available to New Jersey and United States' residents through the internet and mobile application stores. See Kraft Cert. at Exhibits D & E. Defendants also maintain dedicated privacy policies and terms of service for consumers in the United States. Id. at Exhibits G & H.

Defendants next deceptively assert that their services do not "publicly disclose" telephone numbers. See Espelund Decl., ¶5. But Daniel's Law does not require "disclosure to the general public," and Defendants do "disclose" telephone numbers defined by the statute. For example, Defendants concede that the Truecaller App and website "link[] the name of someone who is calling [the Truecaller user] to the phone number." Def. Br. at p. 4; see also Espelund Decl. at ¶7. Defendants further admit that the Truecaller App "will lookup who is associated with such number" and provide additional information from their database confirming the association between an unpublished home telephone number and a Covered Person. See

6

Espelund Decl. at ¶8. These admissions confirm that Defendants disclose Covered Persons' names and unpublished home telephone numbers within the statutory meaning and as alleged in the Complaint. See Kraft Cert. at Exhibit A, ¶37.

Defendants' additional statements that they do not disclose Covered Persons' information are also belied by their own privacy policy, apparently posted *after* this suit commenced. See Espelund Decl. at ¶5; see also Kraft Cert. at Exhibit G. There, Defendants state that Covered Persons may send non-disclosure requests to Defendants via email to "support@truecaller.com". Id. Yet, Defendants also claim that the "support@truecaller.com" address is not associated with them. See Espelund Decl. at ¶25. If Defendants never disclosed information in violation of Daniel's Law, it would be inexplicable for them to maintain a "dedicated team" to ensure compliance with that same law. This inconsistency further undermines the credibility of Defendants' declaration testimony and warrants close examination during merits discovery. Defendants finally contend that "services outside the European Union are provided by a separate company." Espelund Decl. at ¶22. This representation is at best misleading, and at worst, purposefully false, and nevertheless improper at this stage. Defendants' privacy policy and terms of service for United States—based users of truecaller.com and/or the Truecaller App— identify Defendants (including Truecaller International LLP) as the relevant entities responsible for the administration, operation, and continued use of Defendants'

products. See Kraft Cert. at Exhibits D & E.  As noted above, the truecaller.com domain, which discloses Covered Person information, is owned and operated by defendant True Caller Scandinavia AB. Id. at Exhibit B.

As the Court is aware, Atlas's platform provides Covered Persons with the tools and discretion to enforce their privacy rights under Daniel's Law. Id. at Exhibit A, ¶28-32 (describing the Atlas platform, AtlasMail, and Assignors' transmittal of nondisclosure requests). Each of the Individual Plaintiffs and the 19,234 Assignors are Covered Persons under Daniel's Law. Id. at Exhibit A, ¶24. Each Individual Plaintiff and Assignor transmitted nondisclosure requests to Defendants via electronic mail to support@truecaller.com. Exhibit A at ¶48. A copy of one such nondisclosure request, sent by Individual Plaintiff Scott Maloney, appears in the Complaint. Id. at ¶49. Despite these requests, and the thousands of others sent by Plaintiffs, Defendant continued to disclose or redisclose on the Internet, or otherwise made available, the Protected Information of Individual Plaintiffs and Assignors beyond the time period prescribed by Daniel's Law. Id. ¶50.

## <u>LEGAL ARGUMENT</u>

**I.    THE MOTION TO DISMISS SHOULD BE DENIED AS PLAINTIFFS HAVE SATISFIED THE MINIMUM PLEADING STANDARD UNDER RULE 12(b)(6).**

Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied. As the Court is aware, to withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A complaint is plausible when it contains sufficient factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Although plausibility "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). Accordingly, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." <u>Id.</u> at 789.

In assessing a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008); <u>Cryopak Inc. v. Freshly LLC</u>, No. cv-23-18896, 2024 WL 4986818, at *2–3 (D.N.J. Dec. 5, 2024).

9

Defendants agree that, to state a claim under Daniel's Law, Plaintiffs must plead facts showing that after "10 business days following the receipt" of a notice "seeking to prohibit the disclosure," the defendant "disclose[d] or redisclose[d] … or otherwise ma[d]e available" the protected home address or unpublished telephone number of a Covered Person. (Def. Br. at p. 2). Defendants further contort the statutory language to suggest that this dispute is about whether Defendants' services are provided with "express consent," a phrase that appears nowhere in Daniel's Law.

Nonetheless, as set forth below, the Complaint easily satisfies the statute's elements. Specifically, the Complaint adequately alleges that: (a) the Individual Plaintiffs and Assignors (as defined in the Complaint) sent written nondisclosure requests to Defendants, and that those written nondisclosure requests were received by Defendants; and (b) Defendants disclosed, and continued to disclose on the Internet, or otherwise made available, the Protected Information after the statutorily mandated ten (10) business day compliance period, in violation of Daniel's Law. See Kraft Cert., Exhibit A. Applying these standards, and accepting the Complaint's well-pled allegations as true, Plaintiffs have stated plausible claims for relief under Daniel's Law sufficient to defeat Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6).

10

A. **The Complaint Adequately Alleges Defendants' Receipt of Nondisclosure Requests Sent by Covered Persons.**

Daniel's Law requires that covered persons transmit a nondisclosure request to a data broker and that the data broker acts within ten (10) business days of receipt. N.J.S.A. 56:8-166.1(a)(1). Here, the Complaint sufficiently alleges that "starting on or about December 21, 2023, each of the Individual Plaintiffs and [Assignors]…sent [Defendants] written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail." See Kraft Cert. at Exhibit A, ¶52. These requests were all transmitted to support@truecaller.com, the email address listed by Defendants on their recently created Daniel's Law compliance website, for receipt of such requests. Id. at Exhibits A & C. At the pleading stage, these allegations are more than sufficient. Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 678.

Moreover, courts recognize a rebuttable presumption that properly sent emails reach their intended destination. See Stephenson v. AT&T Servs., Inc., Civ. Act. No. CV 21-0709, 2021 WL 3603322, at *5 (E.D. Pa. Aug. 13, 2021) (holding that there is a rebuttable presumption that emails sent have reached their intended destination); see also Ball v. Kotter, 723 F.3d 813, 830 (7th Cir. 2013) (finding that a presumption existed that emails were properly sent, received, and read); Am. Boat Co. v. Unknown Sunken Barge, 418 F.3d 910, 914 (8th Cir. 2005) ("[w]e agree with the district court that a presumption of delivery should apply to e-mails"); Kennell v. Gates, 215 F.3d 825, 829 (8th Cir. 2000) (holding that a jury would be able to make

11

the same inference of receipt regarding information sent via electronic mail as it would for information sent via the postal service).

Moreover, the Complaint further details that the Individual Plaintiffs and Assignors' written nondisclosure requests complied with all legal requirements of Daniel's Law and were, accordingly, legally sufficient. Accord N.J.S.A. § 56:8-166.1(a)(2). Indeed, the Complaint alleges that the: (1) Individual Plaintiffs and Assignors are covered persons under Daniel's Law; and (2) they sent written nondisclosure requests via email to Defendants to cease the disclosure or redisclosure of their Protected Information. See Kraft Cert. at Exhibit A, ¶49.

Defendants' factual claim that "True Software Scandinavia AB" does not own the support@truecaller.com email address, and therefore did not receive the nondisclosure requests, is misleading. See Espelund Decl. at ¶25. This claim relies on material outside the four corners of the Complaint and cannot be considered on a motion to dismiss. See, Witasick v. Minnesota Mut. Life Ins. Co., 803 F.3d 184, 192 (3d. Cir. 2015) ("We consider only facts alleged in the complaint, attached exhibits, and matters of public record."); Sands v. McCormick, 502 F.3d 263, 268 (3d. Cir. 2007) ("Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record."); In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d. Cir. 1997) ("As a general matter,

a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.").  The Court's inquiry can and should end here.

However, even if the Court were to consider this factual assertion, Plaintiffs respectfully submit that this statement is contradicted by Defendants' own publications and sworn statements to the federal government, which is more than enough to create a factual dispute sufficient to overcome any legal sufficiency challenge at the pleading stage (or even on summary judgment). Specifically:

- Defendants trademark filings with the United States Patent & Trademark Office provide that Truecaller.com's software is owned and registered to True Software Scandinavia AB. See Kraft Cert. at Exhibit I.

- True Software Scandinavia AB is identified as the publisher and owner of the TrueCaller App available on the iOS and Android app stores and therefore receives payment for purchases made through the application. Id. at Exhibits D & E.

- True Software Scandinavia AB states, on the Truecaller.com website, that they hold "a publishing certificate…for the Truecaller database (Truecaller.com)." Id. at Exhibit J.

- Defendants direct users, on their own website, to the "support@truecaller.com" email address for all privacy-related

13

requests, including those involving Daniel's Law. Id. at Exhibits G & K.

- True Software Scandinavia AB has certified its involvement in phone lookup, bulk data enrichment, and its mobile applications to the United States Patent and Trademark Office under penalty of perjury, in multiple trademark applications. Id. at Exhibit I.

- True Software Scandinavia AB is the public facing owner of all of Defendants' products and services. Ibid.; see also FNI Cert. at ¶¶6 and 8.

Simply stated, True Software Scandinavia AB appears to suggest that some other entity is responsible for the Daniel's Law violations at issue here, yet all publicly available information, its own public statements, and its sworn statements to the federal government points to True Software Scandinavia AB's involvement and control.

In any event, the Complaint asserts claims against fictitious corporate defendants (ABC Companies 1-10) whose names were unknown at the time of filing, but who are alleged to act in concert with or at the direction of defendant True Software Scandinavia AB. Id. at Exhibit A. The allegations regarding Defendants' ownership of the truecaller.com domain, their public direction that  nondisclosure requests be sent to support@truecaller.com address, their sworn representations to

14

the U.S. Patent and Trademark Office concerning their commercial activities in the United States, and their public statements regarding bulk data enrichment services, collectively support the reasonable inference that True Software Scandinavia AB and ABC Companies 1-10 had actual or constructive receipt of written nondisclosure requests. Accordingly, the Court should conclude that Plaintiffs have adequately alleged both (1) the transmission of written nondisclosure requests by the Individual Plaintiffs and Assignors, and (2) Defendants' receipt of those requests. Defendants' motion to dismiss on this basis should be denied.

### B. The Complaint Adequately Alleges Defendants Disclosed and Continue to Disclose on the Internet—or "Otherwise Make Available"— Protected Information After Receipt of the Written Notice.

The Complaint also adequately alleges that Defendants disclosed, re-disclosed on the Internet, or otherwise made available, the Protected Information of Individual Plaintiffs and Assignors following receipt of written nondisclosure requests. See Kraft Cert., at Exhibit A, ¶34.

Defendants raise two main arguments in response: first that their reverse phone look-up tools are not subject to Daniel's Law, relying upon factual assertions—not legal arguments— about the functionality of the Truecaller App. and truecaller.com; and second, that none of the disclosures at issue were made by True Software Scandinavia AB.

15

Both of these arguments rest almost exclusively on extraneous factual assertions contained in the self-serving Espelund Declaration. As noted above, such factual assertions cannot be considered on a disregarded 12(b)(6) motion under long-standing Third Circuit precedent. See Witasick, 803 F.3d at 192 (3d. Cir. 2015); Sands, 502 F.3d at 268; In re Burlington Coat Factory Secs. Litig., 114 F.3d at 1426. As a result, this Court should reject Defendants' motion on this basis alone. See Hartig Drug Company Inc. v. Senju Pharmaceutical Co. Ltd., 836 F.3d 261, 274 (3d. Cir. 2016) (reversing the District Court's ruling because it considered documents and declaration outside of pleadings on 12(b)(6) application notwithstanding pending 12(b)(1) motion, without converting motion to motion for summary judgment and providing non-movant with sufficient ability to contest the motion through discovery).

Nonetheless, should this Court decide to convert this motion into a summary judgment motion without granting Plaintiffs the ability to take discovery (which it should not do) and consider Defendants' factual claims, Defendants' factual assertions should be rejected for the reasons described below.

## 1. Disclosures Through Defendants' Bulk Enrichment Service Independently Violate Daniel's Law

The Court need not even reach Defendants' "reverse lookup" arguments because Defendants' bulk enrichment services independently violate Daniel's Law. As advertised, the service accepts phone numbers and returns phone numbers,

16

Covered Person's names, as well as additional information. <u>See</u> Kraft Cert. at Exhibit C. These disclosures violate Daniel's Law.

Indeed, courts addressing similar data enrichment or appending tools have found that these services violate Daniel's Law when they disclose information on Covered Persons. <u>See</u>, <u>e.g.</u> <u>Atlas Data Privacy Corp. et al. v. Cole Information Services, Inc.</u>, ESX-L-7209-24, Final Opinion and Order, Sept. 19, 2025, Trans ID LCV20252591430 (granting default judgment to Plaintiffs against data appending service and making factual and legal findings following an evidentiary hearing). These rulings underscore that Defendants' enrichment service violates the statute. This point alone defeats Defendants' motion to dismiss.

## 2. Disclosures by Reverse-Phone Look Up Tools Are Subject to Daniel's Law.

Defendants also contend that a violation of Daniel's Law occurs "only if it discloses a covered person's [Protected Information]" and "not when it confirms a name associated with a known phone number." <u>See</u> Def. Br. at p. 2-3. Defendants are wrong. Indeed, this argument fundamentally misunderstands both the plain language of Daniel's Law and the public policy considerations underlying the statute.

Daniel's Law provides, in pertinent part, that: "[u]pon notification…and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or re-disclose on the Internet or otherwise make

17

available, the home address or unpublished home telephone number of any covered person." See N.J.S.A. § 56:8-166.1(a)(1). Daniel's Law further defines "disclose" to include "'solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." N.J.S.A. § 56:8-166.1(d). This broad definition plainly covers the conduct at issue, even if seen in Defendant's light, e.g., a service that "provide[s]," "transfer[s]," "post[s]," "publish[es]," or even making information viewable or searchable within a database.

Daniel's Law must also "be liberally construed" to further its purpose: enhancing "the safety and security of certain public officials in the justice system[.]" N.J.S.A. § 56:8-166.3. And, in finding Daniel's Law constitutional, the New Jersey Supreme Court in Kratovil highlighted "the grave threats to public officials, tragically illustrated by the murder of the young man for whom Daniel's Law is named," and found that "New Jersey's interest in protecting public officials from such threats and thus ensuring that they may carry out their duties without fear of harm to themselves or their families is clearly a state interest of the highest order." See Kratovil v. City of New Brunswick, Docket No.: A-0216-23, 2024 WL 1826867,

18

at *3 (App. Div. Apr. 26, 2024) <u>aff'd</u> <u>Kratovil v. City of New Brunswick</u>, 261 N.J. 1 (2025).

Given the statute's definition of "disclosure", the Legislature's direction to "liberally construe[]" the law, and the law's judicially reinforced public policy goals, Plaintiffs submit that a violation of Daniel's Law occurs when a defendant *connects* a Covered Person with their unpublished home telephone number (or home address). Whether that connection starts with a user's input of a full or partial telephone number followed by the return of a Covered Person's name *connected* to that phone number—or vice versa—is immaterial under the statute. It is the connection between a name and an unpublished home telephone number (or home address) that jeopardizes the privacy, safety and security of a Covered Person because, through this connection, an bad actor now has the means to find, contact, and cause harm to that Covered Person. In other words, simply knowing an unpublished home telephone number—without more—is inconsequential; the *connection* between that information and the identity of the Covered Person is the fundamental issue the law is designed to remediate.

Defendants contends that a violation of Daniel's Law occurs "only if it discloses a covered person's [Protected Information]" and "not when it confirms a name associated with a known phone number." <u>See</u> Def. Br. at p. 2-3. This argument

is unavailing, demonstrates Defendants' misunderstanding of the statute, and is contradicted by the broad definition of disclose.

Moreover, several Daniel's Law actions pending in the New Jersey Superior Court have addressed this precise issue, *ergo*, whether a reverse lookup tool constitutes a "disclosure" under Daniel's Law. While this dispute is a matter of first impression in Daniel's Law matters pending before this District Court, Plaintiffs respectfully submit that the Superior Court's ***final*** rulings on this issue are persuasive and should be considered, here.

Specifically, in denying a similar motion to dismiss, the Superior Court opined in <u>Atlas Data Privacy Corp. v. Twilio, et al.</u>, that:

> Paragraph 38 [of Plaintiffs' Complaint] provides what is termed as an example of information that…is provided in violation of DANIEL'S Law. And this is where the argument centers on what is considered to be disclosing information under N.J.S.A. § 56:8-166.1, uh, (a)(1). In Subsection D of the statute, it defines disclosed to mean, "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present…exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database regardless of whether a search of such list or database is actually performed." So, I can glean from the complaint that this is a database that is on the internet.
>
> [T]he information here is that there is a lookup of a phone number. The argument is because the user in the example provided has the phone number that it is not a disclosure of that phone number. ***But, what is being disclosed in the lookup tool is that that phone number is affiliated with a covered person. Again, the Court is***

> ***required to liberally construe DANIEL'S Law for its
> purpose. The purpose is to not disclose that a particular
> person's phone number . . . When they're using the
> lookup tool you are now giving them the information that
> that particular phone number belongs to a covered
> person…so I don't think that a restrictive reading of
> DANIEL'S Law in that way suffices***…[S]o, to the extent
> it is argued that just because if I accept that it's a reverse
> directory and I'll get to that in a moment, that in and of
> itself if I liberally read DANIEL'S Law for its affective
> purpose which is not to connect the name and the home
> phone number together…that…would be a disclosure as
> set forth in the statute.

See Kraft Cert., Exhibit L, at p. 44-46 (April 23, 2025, Order and Hearing Transcript

denying defendant's motion to dismiss in Atlas Data Privacy Corp. v. Twilio, Inc.,

Docket No. MRS-L-226-24) (emphasis added).[2]

Here, this Court should adopt the Twilio ruling on this issue as both relevant

and persuasive and accordingly find, as a matter of law, that a reverse lookup tool

(akin to Defendant's Truecaller app and website) results in a "disclosure" under

Daniel's Law. The preeminent issue before this District Court is whether a

*disclosure* of the Protected Information's *association* with the Individual Plaintiffs

---

[2] Despite its obligation to the Court to identify conflicting authority, Defendant
conveniently omits any mention of this decision, which was issued by the same
Court as the Telnyx Order, and which directly conflicts with it. Moreover, the Telnyx
Order was not final and is the subject of a motion for reconsideration on the basis
that the Telnyx Court improperly considered declaration testimony submitted only
on reply at the pleading stage, as Defendant similarly invites this Court to do in
granting this motion. Accordingly, Defendant's statement that there is ***any authority***
for their reading of the statute is dubious at best.

and Assignors is analogous to the statutory definition of "disclose." Plaintiffs submit that, in this context—and as recognized in various Superior Court matters—this statutory interpretation is both appropriate and adequately supported.

Indeed, Defendants themselves concede the issue and affirmatively represented that "[the Truecaller app and website] links the name of someone who is calling…to the phone number…" See Def. Br. at 4; see also generally FNI Cert. Likewise, Defendant further states that "the phone number lookup tool…allows a subscriber to input a phone number in [their] possession" and that "the Truecaller app will ***lookup who is associated with such number***…" Id. (emphasis added). Not only have Defendants conceded that the Truecaller app and website *violate Daniel's Law*, but they also affirmatively represent that their products provide the requisite "link" or "association" between the Protected Information and the relevant Covered Persons. See FNI Cert. at ¶¶5-8

Defendants' contention that the "[user] must disclose the phone number," and their products merely confirm the "information associated" (Def. Br. at 7) is not only inaccurate but does not protect them from liability under Daniel's Law. To the contrary, it confirms that Defendants possess the Protected Information at issue *and* that they disclose, redisclose, or *otherwise make that information available* by confirming the link between the search input and Covered Persons. See FNI Cert. at ¶¶5-8.

22

Defendants' reliance on the Superior Court's decision in <u>Telnyx</u> is similarly unpersuasive. <u>See</u> Def. Br. at p. 5. First, the ruling is unclear because it both seemingly granted a motion (after entry of an order denying it) and directed Plaintiffs' to replead their claims. Next, the decision is not final and remains pending on a motion for reconsideration that has been fully briefed and has been pending argument for several months. Moreover, the <u>Telnyx</u> decision is an outlier; it is the only circumstance in which a motion to dismiss was granted, albeit with a requirement that Plaintiffs reassert the very same claims they filed in the first place.

Given this, dismissal pursuant to Rule 12(b)(6) here is inappropriate, and the Court should deny Defendants' motion. The Complaint adequately alleges Defendants' ongoing violations of Daniel's Law; specifically, the Complaint alleges that Defendants are "entit[ies] that disclose or re-disclose on the Internet or otherwise make available the home addresses and/or unpublished home telephone numbers of covered persons" via truecaller.com and the Truecaller app (Exhibit A, ¶34-37); that the written nondisclosure requests explicitly identify the Protected Information at issue (<u>Id.</u> at ¶49); Defendants "failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of" the Protected Information belonging to Individual Plaintiffs and Assignors (<u>Id.</u> at ¶50); and that, as of the date of filing, Defendants "still refuse to comply." <u>Id.</u> at ¶51.

23

In sum, the Complaint "allege[s] sufficient facts to raise a reasonable expectation that discovery will uncover proof of [the] claims" and that the requested relief is "plausible on its face." <u>Ashcroft</u>, 556 U.S. 662, 678 (2009).

### 3. Defendants Disclose, Redisclose on the Internet or Otherwise Make Available, the Names and Unpublished Home Telephone Number of Covered Persons.

Separately, Defendants have also put forth narrowly crafted statements claiming that defendant True Software Scandinavia AB is not the responsible party here. <u>See</u> Def. Br. at p. 3; Espelund Cert. at ¶5-12; <u>compare</u> FNI Cert. at ¶¶ 6 and 8. This argument again relies on a significant amount of factual information outside the Complaint and should not be considered by the Court. Nonetheless, if the Court were to consider this argument, it should look at contradictory publicly available information that raises significant concerns regarding the veracity of the Espelund Declaration[3] and supports the conclusion that True Software Scandinavia AB is responsible and/or involved in the disclosures at issue in this matter (as they have stated to the USPTO and as they declare on their website), and as a result the motion to dismiss should be denied and the parties should engage in merits discovery. <u>See</u>

---

[3] Defendants should be prohibited from providing any additional declarations or factual assertions on reply, or if they do so, then the Court should not consider same. <u>See</u> <u>supra</u> at Point I.B. (noting Third Circuit precedent barring such extraneous factual matters without discovery on a 12(b)(6) posture).

24

*supra*, at Section I. A (explaining how True Software Scandinavia AB owns and/or operates Truecaller.com and the iOS and Android apps at issue here).

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully submit that the Court should deny Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**PEM LAW LLP**
*Attorneys for Plaintiffs*

By:    */s/Rajiv D. Parikh*
RAJIV D. PARIKH

Dated: November 28, 2025