# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONY, and PATRICK COLLIGAN,<br><br>*Plaintiffs,*<br><br>v.<br><br>TRUE SOFTWARE SCANDINAVIA AB, RICHARD ROES 1-10, *fictitious names of unknown individuals and* ABC COMPANIES 1-10, *fictitious names of unknown entities,*<br><br>*Defendants.* | Case No.: 1:25-cv-07650-HB<br><br>Civil Action<br><br>**Motion Day: February 18, 2026** |

## DEFENDANT TRUE SOFTWARE SCANDINAVIA AB'S
## REPLY TO PLAINTIFF'S OPPOSITION AND
## IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS
## PURSUANT TO *FED. R. CIV. P.* 12(b)(2)

**GREENSPOON MARDER LLP**
Kelly M. Purcaro, Esq.
Kory Ann Ferro, Esq.
One Gateway Center, Suite 2600
Newark, New Jersey 07102
Tel.: (732) 456-8734
Kelly.Purcaro@gmlaw.com
KoryAnn.Ferro@gmlaw.com
*Attorneys for Defendant True Software Scandinavia AB*

# **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................1

II. STATEMENT OF FACTS ........................................................................................2

III. LEGAL ARGUMENT................................................................................................3

    A. True Software is Not Subject to Specific Personal Jurisdiction in New Jersey ........................................................................................................ 3

    B. The *Calder* Test Does Not Apply as Daniel's Law is Not an Intentional Tort................................................................................................ 10

    C. Even if *Calder* Were Appliable, Which it is Not, True Software Has Not Aimed Conduct to New Jersey ............................................................. 13

IV. CONCLUSION..........................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014), *as corrected* (May 12, 2014) .................................14

*Atlas Data Privacy Corp. v. GoHunt, LLC, et al.*,
   Case No. 1:24-cv-04380-HB ........................................................................................3

*Blazovic v. Andrich*,
   124 N.J. 90 (1991) ........................................................................................................10

*Bonpua v. Fagan*,
   253 N.J. Super. 475 (App. Div. 1992) .....................................................................10

*Christie v. Nat'l Inst. for Newman Stud.*,
   258 F. Supp. 3d 494 (D.N.J. 2017) ............................................................................14

*Daugherty v. Adams*,
   No. CV 17-368, 2019 WL 7987859 (W.D. Pa. Nov. 15, 2019),
   *report and recommendation adopted sub nom. Daugherty v.*
   *Tiversa Holding Corp.*, No. CV 17-368, 2020 WL 467828
   (W.D. Pa. Jan. 29, 2020), *aff'd sub nom. LabMD Inc. v. Boback*,
   47 F.4th 164 (3d Cir. 2022). .......................................................................................3

*ESAB Grp., Inc. v. Centricut, Inc.*,
   126 F.3d 617 (4th Cir. 1997) .....................................................................................14

*Hasson v. FullStory, Inc.*,
   114 F.4th 181 (3d Cir. 2024) ................................................................................4, 10

*Hepp v. Facebook*,
   14 F.4th 204 (3d Cir. 2021) ..........................................................................................4

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998) .......................................................................................14

*Lopez v. Corozal Auto Repair Inc.*,
   732 F. Supp. 3d 383 (D.N.J. 2024) ............................................................................10

*Marten v. Godwin*,
  499 F.3d 290 (3d Cir. 2007) ..................................................................................14

*Millison v. E.I. du Pont de Nemours & Co.*,
  101 N.J. 161 (1985) ..............................................................................................10

*Remick v. Manfredy*,
  238 F.3d 248 (3d Cir. 2001) ..................................................................................10

## **Other Authorities**

Restatement 2d of Torts, § 8A ...................................................................................11

Defendant True Software Scandinavia AB ("True Software"), by its undersigned attorneys, submits the following reply memorandum in response to Plaintiffs' opposition and in further support of its Motion to Dismiss.

## I. PRELIMINARY STATEMENT

Despite abundant evidence demonstrating that True Software has no contact whatsoever with New Jersey, Plaintiffs have improperly continued their crusade against it. The uncontroverted evidence amply demonstrates that True Software does not operate in New Jersey at all, does not sell or market its application in New Jersey, does not house the data of New Jersey residents, and did not receive the Daniel's Law requests. Under no stretch of the imagination can Plaintiffs demonstrate any purposeful availment by True Software of the privilege of conducting business in New Jersey because True Software conducts exactly **zero** business here. They are confined to operations in the European Union by design as a result of European regulatory requirements.

In a last ditch and transparent effort to assert jurisdiction which so clearly does not exist, Plaintiffs have thrown a *Calder* hail Mary. Such position is entirely disingenuous as Plaintiffs new argument that Daniel's Law is an intentional tort is belied by this Court's prior decision and completely contrary to Plaintiffs' established position that Daniel's Law is a negligence statute. Moreover, even were *Calder* to apply, which it does not, True Software does not expressly aim any

1

conduct at New Jersey. Thus, under either the traditional or *Calder* effects test, Plaintiffs' arguments fail. There is no basis for personal jurisdiction against a Swedish company with no ties to New Jersey who did not receive the Daniel's Laws requests as same were sent to a separate and distinct entity.

## II. STATEMENT OF FACTS

True Software is a Swedish company with its principal place of business in Stockholm. *See* Declaration of Ola Espelund in Support of Motions to Dismiss (Doc. No. 16-2) ("Espelund Decl.") at ¶¶ 16, 18. True Software developed the Truecaller application, a mobile application for identifying and blocking unknown numbers. *Id.* at ¶ 4; December 18, 2025 Deposition of True Software Scandinavia by Ola Espelund[1] ("Espelund Dep.") at Tr 25:17-27:25 (detailing service offerings); Tr. 98:23-99:17 (True Caller "does not have access to home addresses" and application is "not a search directory as the yellow pages where you can go in and you search for a name and you will get the phone number and address").

True Software distributes the Truecaller application solely in the European Union and hosts data of European Union users in Europe. *Id.* at ¶ 17, 19, 20, 22, 23. True Software does not engage in any business whatsoever with New Jersey or the U.S. *Id.* at ¶¶ 21, 24. Through a licensing agreement, the distribution of the Truecaller application and the database containing information related to any New

---

[1] *See* Reply Declaration of Kory Ann Ferro, Esq. ("Ferro Decl.") at Ex. A.

2

Jersey or U.S. residents is handled solely by a completely separate entity – Truecaller International LLP ("Truecaller International"). *See, e.g.*, Espelund Decl. at Tr. 75:25-76:5. True Software has not directed any business or targeted New Jersey in any way – it does not operate here and cannot be haled into Court here.

## III.   LEGAL ARGUMENT

### A.   True Software is Not Subject to Specific Personal Jurisdiction in New Jersey

In addressing personal jurisdiction under the traditional, purposeful availment test[2] specifically as to True Software, Plaintiffs completely fail to establish the requisite elements.

As set forth in True Software's moving brief,[3] to determine whether the Court can exercise specific jurisdiction, Plaintiffs must demonstrate: (1) that True Software has minimum contacts with New Jersey such that it "purposefully availed itself of the privilege of conducting activities within" New Jersey and "invoked the benefits and protections of" New Jersey's laws; (2) Plaintiffs' claims "arise out of or relate to at least some of those contacts, evidencing a strong relationship among" True

---

[2] In failing to make an argument in their opposition, Plaintiffs waived any claim of general jurisdiction. *See Daugherty v. Adams*, No. CV 17-368, 2019 WL 7987859, at *13 (W.D. Pa. Nov. 15, 2019), *report and recommendation adopted sub nom. Daugherty v. Tiversa Holding Corp.*, No. CV 17-368, 2020 WL 467828 (W.D. Pa. Jan. 29, 2020), *aff'd sub nom. LabMD Inc. v. Boback*, 47 F.4th 164 (3d Cir. 2022).
[3] Doc. No. 16-1 and, as incorporated by reference, the briefing in the joint defense motion filed on March 18, 2025 under Doc. No. 42 in the action captioned *Atlas Data Privacy Corp. v. GoHunt, LLC, et al.*, Case No. 1:24-cv-04380-HB.

Software, New Jersey, and this litigation; and (3) if the former two are met, whether the Court's exercise of jurisdiction over True Software "comports with traditional notions of fair play and substantial justice such that" True Software "should reasonably anticipate being haled into court" in New Jersey. *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (internal quotation marks and citation omitted). Purposeful availment requires True Software to have taken "a deliberate act reaching out to do business" in New Jersey or otherwise engaged in a "deliberate targeting" of New Jersey. *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021).

Plaintiff cannot meet any of the three factors for exercise of specific jurisdiction. True Software is a Swedish company with its principal place of business in Stockholm, Sweden. Espelund Decl. at ¶¶ 16-20. True Software has no offices or physical locations in New Jersey; does not own or control any companies that operate in New Jersey; does not own or lease property in New Jersey; has no bank accounts in New Jersey; has no employees in New Jersey; does not work with any independent contractors in New Jersey; is not registered to do business in New Jersey; does not have a registered agent for service of process in New Jersey; has not entered into any contracts to be performed in New Jersey; has not commenced any legal actions within New Jersey; has not filed taxes in New Jersey; does not target any advertising, marketing, or promotional materials at New Jersey residents; and does not select who is advertising on their platform. *See* Espelund Decl. at ¶ 21;

Espelund Dep. at Tr. 120:8-11 and 146:9-12; November 26, 2025 Defendant True Software Scandinavia AB's Answers to Plaintiffs' First Set of Interrogatories[4] ("Interrogatories") at Nos. 2-4, 11-15.

True Software does not sell the Truecaller application or other services to New Jersey (or U.S.) residents nor does it host the data of New Jersey (or U.S.) citizens since it only serves and stores data of European residents. *See* Espelund Decl. at ¶¶ 13, 17, 22-24; Interrogatories at Nos. 1, 6; Espelund Dep. at Tr. 29:12-13 ("We don't have users in the U.S."); Tr. 31:13-32:14 (True Software does not "source data from the U.S.  We don't have any user base in the U.S."); Tr. 41:10-20 ("True Software is the company that provides the service to users in Europe.").

Indeed, True Software detailed, at length, that it owns the intellectual property related to the Truecaller application, but "has licensed the use and distribution outside of Europe" to Truecaller International,[5] who keeps a separate database for non-European Union residents.[6] Espelund Decl. at Tr. 75:25-76:5; *see*

---

[4] *See* Ferro Decl. at Ex. B.

[5] Truecaller International has separate operations with separate management and its own authorized representatives. *See* Espelund Decl. at Tr. 41:10-20, Tr. 51:3-17, Tr. 75:25-76:5.  "For regulatory reasons, True Software cannot be involved in [Truecaller International's] operations[.]" *Id.* at Tr. 52:20-22.

[6] Information related to U.S. residents would be "very, very much of an edge case," would be "very rare," and would mostly relate to fraudulent or spam calls coming from the U.S. to European users.  Tr. at 31:13-32:14; Tr. 140:15-142:11 ("very, very low part of the database we have in Europe"); Tr. 162:3-13 ("it's not a very common use case."); Tr. 163:2-164:15 ("very low portion of . . . the data").  True Software does not normally have access to Truecaller International's proprietary data. Tr.

5

*also, e.g.*, Tr. 41:10-20, Tr. 48:18-49:4, Tr. 64:25-65:11, Tr. 65:16-24 ("[T]he distribution and the ownership of the database is separated.  So the database for European services is based in Europe, and the database and the distribution of everything . . . outside Europe is handled by Truecaller Internation and served, as far as I understand, from database in Mumbai."); Tr. 88:12-23; Tr. 139:21-140:9 ("So the distribution of non-European business happens in India . . . . The database is in India.  The ownership of the database is held by Truecaller International.").

Even the website utilizes geolocation technology so that visitors are directed to True Software's page if accessing same from Europe, but if visitors are outside of the European Union, "you will land on a different page that is managed by Truecaller International."  *Id.* at Tr. 68:19-70:14; *see also* Tr. 71:24-72:11 ("[T]he distribution . . . of the brand or the application of the domain or any visitors to the domain are managed when it comes to non-European visitors, users, businesses, it's managed by Truecaller International from India, and the database for that non-European operations will also be managed from India entirely.").  Moreover, requests to remove information from the databases go to different entities

---

139:21-140:9.  Cross database searches "could be a possibility," but only in the event of a spam or fraud by a business, not a private individual.  Tr. 144:23-145:25; Tr, 162:17-25.  The deponent was not aware of any New Jersey individual's private information in the True Software database and testified that, were that to happen, it would be a glitch – "something wrong with the service."  Tr. 159:6-160:16.  Such testimony is directly contrary to Plaintiffs' presentation.  *See* Opp. at pp. 42-43.

6

depending on location, with all US-based requests being received and processed by Truecaller International. *Id.* at Tr. Tr. 154:17-155:25 ("It will go to different entities, different persons, different support teams.").

Indeed, Plaintiffs themselves have submitted evidence in this case that confirms that True Software has no contacts with New Jersey as Truecaller International, not True Software, services the U.S. For example, the Privacy Policy applicable to U.S. users specifically states that it "addresses specific disclosure requirements . . . by Truecaller International LLP" and not True Software. *See* Certification of Thomas R. Kraft, Esq. (Doc. No. 25-1) ("Kraft Cert.") at Ex. G. Residents of the "EU, EEA, UK and Switzerland" need to click a separate link (https://www.truecaller.com/privacy-policy-eu), which opens a Privacy Policy specifically applicable to residents of Europe and "describes how True Software Scandinavia AB . . . processes your personal data." Similarly, the Terms & Conditions state: "If you reside outside the European Union (EU), European Economic Area and Switzerland ("Europe"), You are entering into these Terms of Service with Truecaller International LLP[.]" *See* Kraft Cert. at Ex. H; *see also* Espelund Dep. at Tr. 92:4-23 (U.S. users sign terms of service and a privacy policy with Truecaller International.). It also directs European residents to a separate link (https://www.truecaller.com/terms-of-service-eu), which opens a Terms of Service that "govern your use of the Services provided by True Software Scandinavia AB"

7

and applies only to residents of Europe. Furthermore, the Publication Certificate provided to the Court by Plaintiffs specifically states: "The following falls outside of the scope of the publishing certificate: Any provision of the service by Truecaller International LLP, i.e. the parts of the service offered to users outside the EU." *See* Kraft Cert. at Ex. J. Moreover, the Daniel's Law Information page reflects that requests should be sent to Truecaller International LLP. *Id.* at Ex K.

Contrary to Plaintiffs' position that True Software has "acknowledged familiarity with New Jersey privacy laws," True Software does not audit, review or evaluate New Jersey law. *See* Interrogatories at No. 7; Espelund Decl. at Tr. 31:6-8 ("True Software monitor[s] the privacy regulation[s] in the markets where we are present, and that is not the U.S."). True Software testified that they "apply GDPR standard and ha[ve] been doing that for a long time." Espelund Dep. at Tr. 174:6-177:13. True Software did not know of (until the lawsuit) or monitor for Daniel's Law since True Software does not operate in the U.S. *Id.* at Tr. 178:14-179:16.

Further, True Software did not have involvement with processing the Daniel's Law requests as Plaintiffs' posture. *See* Opp. at pp. 42-43. Instead, the Daniel's Law requests were directed to Truecaller International, not True Software. *See* Interrogatories at Nos. 8-9; Espelund Dep. at Tr. 196:2-4. At some point, Truecaller International sought the input of True Software due to concerns as to whether the Daniel's Law requests were genuine requests because of their magnitude. *See*

8

Espelund Dep. at Tr. 198:19-200:6.  However, such involvement was at a "high level," True Software was not involved in the operational details, nor was involved in the verification of the requests.  *Id.* at Tr. 200:12-16, Tr. 201:20-202:17.

The foregoing evinces a total absence of purposeful availment.  True Software has taken no deliberate acts to do business in or otherwise target New Jersey.  To the contrary, True Software conducts **zero** business in New Jersey, does not market or sell in New Jersey, does not host the data of New Jersey residents, does not monitor New Jersey law, and does not operate in any fashion in New Jersey.  At most, Plaintiffs point to an incredibly rare scenario where a New Jersey resident's information could possibly be in the True Software database, the ability for True Software to search Truecaller International's database with respect to U.S. fraud or spam calls only (which would not be individual's information), and True Software's peripheral, broad feedback on the Daniel's Law requests received by Truecaller International.  Such minor, speculative, and abnormal events are in no way demonstrative of activities directed to New Jersey or targeting New Jersey.  Moreover, the Daniel's Law claims here do not arise out of same as True Software was not even the recipient of the requests.  Finally, even though the first two elements are not met, it is also abundantly clear that True Software, a Swedish company operating entirely in Europe with no sales to New Jersey whatsoever, could not be anticipated to be haled into Court here.

9

### B. The Calder Test Does Not Apply as Daniel's Law is Not an Intentional Tort

As Daniel's Law is not an intentional tort, *Calder* does not apply here. "[T]he *Calder* 'effects' test requires a plaintiff to plead facts establishing that: (1) the defendant committed an **intentional** tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson*, 114 F.4th at 187 (emphasis added); *see also Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001). "[I]ntentional wrongdoing [is] 'different in degree' from either negligence or wanton and willful conduct. To act intentionally involves knowingly or purposefully engaging in conduct 'substantially certain' to result in injury to another." *Blazovic v. Andrich*, 124 N.J. 90, 107 (1991) (citation omitted); *see also Bonpua v. Fagan*, 253 N.J. Super. 475, 478 (App. Div. 1992). "'The mere knowledge and appreciation of a risk – something short of substantial certainty – is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong.'" *Lopez v. Corozal Auto Repair Inc.*, 732 F. Supp. 3d 383, 390 (D.N.J. 2024) (quoting *Millison v. E.I. du Pont de Nemours & Co.*, 101 N.J. 161, 177 (1985)). The "meaning of intent is that actor desires to cause consequences of his act or is substantially certain that such consequences will result from his actions." *Millison*, 101 N.J. at 178 (citing

10

*Restatement 2d of Torts*, § 8A).

Plaintiffs and the Attorney General have repeatedly asked for the Court to read a negligence standard into Daniel's Law under the guise of constitutional avoidance.[7] Indeed, the Court's November 26, 2024 Memorandum recognized: "Plaintiffs and the New Jersey Attorney General counter that the standard of liability is negligence." *See* Ferro Decl. at Ex. C, p. 35. This Court agreed with Plaintiffs and the Attorney General in holding: "Daniel's Law is reasonably susceptible to a constriction with a negligence standard of liability." *Id.* at p. 38. This Court went on to find: "Daniel's Law does not mandate a specific intent standard of liability or a standard of liability without fault for actual or liquidated damages. The inclusion of a negligence standard of liability for actual or liquidated damages is a reasonable construction of Daniel's Law, avoids absurd results, is consistent with analogous New Jersey privacy law, and saves the law from constitutional repugnancy." *Id.* at p. 39.

Following such decision, on appeal, Plaintiffs doubled down on Daniel's Law having a scienter of negligence. For example:

(1) In Plaintiff's May 12, 2025 Appellee's Joint Response Brief filed with the Third Circuit, Plaintiff stated: "Daniel's Law Requires Proof of Ordinary Negligence." *See* Ferro Decl. at Ex. D, p. 51.

---

[7] True Software has consistently maintained that Daniel's Law has no *mens rea* making it constitutionally infirm, which is currently the subject of a Third Circuit appeal. True Software reserves all rights, claims, and arguments in this regard.

11

    (2)    In Plaintiffs' September 12, 2025 Comment on the Third Circuit's Request to Answer Certified Questions, Plaintiff stated: "Under the best interpretation of this portion of Daniel's Law, a claim for actual or liquidated damages requires proof by a preponderance of the evidence" that the defendant was "acting with at least negligent disregard for the rights of the covered person who sent the request." *Id.* at Ex. E, pp. 1-2.

    (3)    In Plaintiff's December 11, 2025 Brief of Plaintiffs-Respondents on Certified Question of Law from the U.S. Court of Appeals for the Third Circuit, Plaintiffs asserted: "Daniel's Law is only reasonably interpreted to require proof that a defendant committed a 'violation' of the statute by acting with negligent disregard of the law in order to be held liable for actual or liquidated damages[.]" *Id.* at Ex. F, p. 19; *see also* pp. 20 ("presumption of negligence is even stronger here"), 21 (nothing suggests Legislature intended to deviate from negligence standard), 22 (obvious legislative intent for negligence standard), 25 (tort statutes assumed to operate with negligence standard).

Not once in all of their briefing before this Court, the Third Circuit, or the New Jersey Supreme Court did Plaintiffs[8] contend that Daniel's Law is an intentional tort. It is only now that it suits them for a personal jurisdiction argument that Plaintiffs contend, that Daniel's Law is an intentional tort triggering the *Calder* test. So, in essence, if Plaintiffs succeed in their appeal, their argument as to the applicability of *Calder* necessarily fails.

Plaintiffs' contradictory argument makes little sense: "Daniel's Law permits

---

[8] The New Jersey Attorney General has also continued to advocate for a negligence standard. *See* Ferro Decl. at Ex. G, p. 39 ("New Jersey courts would construe [Daniel's Law] to impose a negligence standard."); p. 44 ("Daniel's Law Imposes A Negligence Standard."); Ex. H, p. 2 ("Text, structure, statutory history, and tort-law principles point the same way: Section 166.1 requires negligence.").

liability where the inclusion of the protected information results from negligence, but the tort remains intentional because the act of disclosure itself is deliberate."[9] *See* Opp. at p. 6. What does that mean – Daniel's Law is both an intentional and a negligence-based tort? Plaintiff attempts to parse out a difference between "an intentional act of disclosure" and a negligent "inclusion of a particular individual's information." *Id.* Same cannot be countenanced. Intentional does not equate to a deliberate act – it connotes a specific state of mind that accompanies such act.

In short, Plaintiff's attempt to belatedly recast Daniel's Law as an intentional tort cannot be reconciled with this Court's finding and Plaintiffs' own position nor with the legal definition of intent. *Calder* is inapplicable.

### C. Even if Calder Were Appliable, Which it is Not, True Software Has Not Aimed Conduct to New Jersey

Assuming, *arguendo*, *Calder* applies, which it does not, Plaintiffs invocation of same still fails as True Software has aimed no conduct towards New Jersey.

"[T]he *Calder* 'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct

---

[9] Even if Daniel's Law was an intentional tort, which it is not, True Software did not take any "intentional act" as Plaintiff postures. *See* Opp. at p. 39. That True Software has the capability to search Truecaller International's database regarding fraud or spam calls does not demonstrate any collection, publication, or disclosure of New Jersey residents' information nor does the "edge case" of a European user flagging information related to a New Jersey resident who called them. Plaintiffs provide no evidence that any of the incredibly minimal interactions with U.S. data related to any New Jersey resident or purported covered person subject to this case.

at the forum, and thereby made the forum the focal point of the tortious activity." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) (emphasis in original). "Simply asserting that the defendant knew that the plaintiff . . . was located in the forum would be insufficient in itself to meet this requirement." *Id.*; *Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 502 (D.N.J. 2017) (specific jurisdiction does not extend even for an intentional tort if the defendant's only connection is plaintiff's presence in the forum); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), *as corrected* (May 12, 2014) ("[P]laintiff cannot be the only link between the defendant and the forum." (internal quotation marks and citation omitted)).

    Instead, the "defendant must 'manifest behavior intentionally targeted at and focused on' the forum for *Calder* to be satisfied." *IMO Indus.*, 155 F.3d at 265 (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)); *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) ("[T]he effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state."). Typically, "this will require some type of 'entry' into the forum state by the defendant." *IMO Indus.*, 155 F.3d at 265. Even tortious conduct over the internet "must be intentionally directed or 'expressly aimed' at the forum State." *Christie*, 258 F. Supp. 3d at 502.

As set forth above, True Software has not intentionally targeted or focused on New Jersey whatsoever. *See supra*, III(A). Quite the opposite – the evidence reflects, and Plaintiffs admit, that True Software has taken affirmative steps to not engage with New Jersey (or the U.S.) at all. True Software does not do business in, market in, sell to, host data of, monitor the law of, or operate in New Jersey. Contrary to Plaintiffs' misstatements (Opp. at p. 41), True Software had no knowledge of Daniel's Law until this suit and did not receive the Daniel's Law requests, process the data related to the requests, or have "advance notice" of same. Instead, True Software provided only high-level feedback after the fact. Belated notice of Daniel's Law requests not received by True Software and broad knowledge of international regulatory schemes in no way evidence an intentional targeting or focus on New Jersey. Thus, Plaintiffs' *Calder* argument, if the Court even entertains it, which the Court should not, unequivocally fails.

## IV.    CONCLUSION

For the reasons set forth herein and set forth in the moving brief and consolidated briefing incorporated therein by reference, Plaintiffs' Complaint against True Software must be dismissed with prejudice.

DATED:  February 10, 2026          Respectfully submitted,
                                    **GREENSPOON MARDER LLP**

                                    */s/ Kory Ann Ferro*
                                    Kory Ann Ferro, Esq.

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2026 I filed a true and correct copy of the foregoing with the Court and a copy will be served upon all Parties of record via CM/ECF.

*/s/ Kory Ann Ferro*
KORY ANN FERRO
